UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

BANK OF AMERICA CORPORATION,

       Plaintiff,

       -v-                                        No. 09 Civ. 4561 (LTS)(MHD)

JOHN P. EMERT,

       Defendant.

-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

In this action arising out of the disputed termination of a former employee's stock option awards, plaintiff Bank of America Corporation ("BAC" or "Plaintiff") seeks a declaratory judgment pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 concerning its obligations, if any, to defendant John P. Emert ("Emert" or "Defendant") with respect to the awards. The Court has jurisdiction of the action pursuant to 28 U.S.C. § 1332.

BAC has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. The Court has reviewed thoroughly all of the parties' submissions and, for the reasons explained below, Plaintiff's motion for summary judgment is granted.

### BACKGROUND

The following material facts are undisputed.[1] Emert accepted an offer of employment in the position of Assistant General Counsel by Bank of America, N.A., a wholly

---

[1] Citations to Plaintiff's S.D.N.Y. Local Civil Rule 56.1 Statement ("Pl. 56.1 St.") incorporate by reference citations to the underlying evidentiary submissions. Defendant does not dispute any of the facts proffered by Plaintiff.

owned subsidiary of BAC, on or about February 1, 2001. (Pl. 56.1 St. ¶ 3.) The terms of his employment were set forth in an Offer Letter executed by Emert. As part of his compensation, Emert was to receive two stock option awards: an award of 4,200 Bank of America shares with a grant date of February 1, 2002, and an award of 18,000 Bank of America shares with a grant date 30 days from Emert's start date. (Id. ¶ 4.) Emert received two Stock Option Award Agreements ("Award Agreements") providing the terms of the stock option awards. (Id. ¶¶ 4-5). Emert also received three discretionary awards of Bank of America stock options with grant dates of February 3, 2003, February 2, 2004 and February 1, 2005. (Id. ¶ 6.) Defendant received 375 restricted stock units on February 1, 2005, as well. (Id. ¶ 7.)

Each of the stock option awards were issued pursuant to BAC's Key Employee Stock Plan and 2003 Key Associate Stock Plan, which were approved by BAC's Board of Directors and stockholders. (Id. ¶¶ 9-10.) Emert received a copy of an Award Agreement documenting each of his awards. The Award Agreements are governed by Delaware law. (Yarusinsky Cert., Exh. K, ¶ 19.5; Yarusinsky Cert., Exh. L, ¶ 18.6.) The first page of each Award Agreement provides,

> In the event of your termination of employment with Bank of America and its Subsidiaries . . . this Option shall expire on the earlier of the Expiration Date stated above or the following cancellation date depending on the reason for termination.

(Id. ¶ 13.) The Award Agreements provide that, for all terminations not related to retirement, disability, death or workforce reduction, the options expire 90 days after the employee's termination date. (Id.) Emery voluntarily resigned from his position at BAC on or about April 15, 2005, and his options expired on July 14, 2005. (Id. ¶¶ 11, 14.)

In addition to the clear language in the Award Agreements (which Emert

acknowledges that he received), BAC provided Emert other forms of notice regarding the expiration of his options as well. BAC maintained an employee handbook that stated that stock option awards "generally must be exercised within ninety calendar days from the date your employment ends." (Yarusinsky Cert., Exh. O, p. 176). The employee handbook also stated that "[i]n no event may [one] exercise an option after the conclusion of its original term." (Pl. 56.1 St. ¶ 15.) BAC also maintained a website, "Personnel Online," that contained information regarding the expiration of stock option awards. Emert accessed this website and reviewed his stock options on March 4, 2005. (Id. ¶¶ 16-17.)

Emert did not exercise his stock options, which were worth approximately $875,000, within ninety days of his termination. (Id. ¶ 19.) On or about November 28, 2006, Emert attempted to obtain the value of his expired stock options from the Executive Compensation Department at BAC, but he was told that his request could not be honored. (Id. ¶¶ 20-21.) Emert filed an appeal with BAC's Associate Equity Escalation Committee on or about March 9, 2007, which was also denied. (Id. ¶¶ 22-23.) Emert subsequently initiated an arbitration proceeding with respect to the stock option claim against Banc of America Securities ("BAS"), a separate entity from his employer, Bank of America, N.A., that is also a wholly-owned subsidiary of BAC. BAS sought and obtained an injunction barring the arbitration proceeding. See Order Granting Plaintiff's Motion for Summary Judgment, Banc of America Securities LLC v. Emert, No. 08 Civ. 8703 (S.D.N.Y. Sept. 3, 2009).

DISCUSSION

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction," a federal court may issue a judgment declaring "the rights and other legal

relations of any interested party seeking such declaration." 28 U.S.C.A. § 2201 (West 2006); Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 241 (1937). A declaratory judgment action presents an actual controversy if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941). The Second Circuit "liberally construes" the Declaratory Judgment Act "to accomplish the purpose intended, i.e. to afford a speedy and inexpensive method of adjudicating legal disputes . . . and to settle legal rights and remove uncertainty and insecurity from legal relationships." Beacon Const. Co. v. Matco Elec. Co., 521 F.2d 392, 397 (2d Cir. 1975). Emert's pursuit of remedies in both BAC's internal appeals process and in FINRA Arbitration, as well as his opposition to BAC's motion in this Court, demonstrate that uncertainty and insecurity exist regarding the parties' legal relationship.

Summary judgment is to be granted in favor of a moving party where the "pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The moving party bears the burden of establishing that there is no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A fact is considered material "if it 'might affect the outcome of the suit under the governing law,'" and an issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson, 477 U.S. at 248). The Second Circuit has explained, however, that "[t]he party against whom summary judgment is sought . . . 'must do more than simply show

that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" <u>Caldarola v. Calabrese</u>, 298 F.3d 156, 160 (2d Cir. 2002) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986)).

Under applicable Delaware law, corporations "may create and issue . . . rights or options entitling the holders thereof to acquire from the corporation any shares of its capital stock . . . . such rights or options to be evidenced by or in such instrument or instruments as shall be approved by the board of directors." Del. Code Ann. tit. 8, §157(a) (West, Westlaw through 74 Laws 2004, ch. 326, §§ 5-7). "[C]ommitments regarding the issuance of stock must be approved in writing by the board of directors . . . to preserve the board's broad authority over the corporation and to protect the certainty of investors' expectations regarding stock." <u>Grimes v. Alteon, Inc.</u>, 804 A.2d 256, 258 (Del. 2002). "The issuance of corporate stock is an act of fundamental legal significance having a direct bearing upon questions of corporate governance, control and capital structure of the enterprise. The law properly requires certainty in such matters." <u>STAAR Surgical v. Waggoner</u>, 588 A.2d 1130, 1136 (Del. 1991).

The Delaware statute requires strict adherence by courts to the express terms of stock option agreements properly executed by corporate boards of directors. <u>See</u> Del. Code Ann. tit. 8, §157(b) (West, Westlaw through 74 Laws 2004, ch. 326, §§ 5-7) ("in the absence of actual fraud in the transaction, the judgment of the directors as to the consideration for the issuance of such rights or options and the sufficiency thereof shall be conslusive [sic]."); <u>Mariasch v. Gillette Co.</u>, 521 F.3d 68, 74 (1st Cir. 2008) (applying Delaware law and holding that a corporation was not required to permit a seven day extension for exercising stock options because allowing such

"a deviation from the terms of the Stock Option Plan would undermine the board's authority . . . thereby creating unpredictability for investors in contravention of Delaware law.").

Emert does not dispute that he failed to exercise his stock options before they expired. Rather, he asserts that Plaintiff breached its duty of good faith and fair dealing by not providing him with additional written notice of the stock options' pending expiration. Under Delaware law, however, the implied covenant of good faith and fair dealing "cannot contravene the parties' express agreement and cannot be used to forge a new agreement beyond the scope of the written contract." Chamison v. HealthTrust, Inc., 735 A.2d 912, 921 (Del. Ch. 1999), aff'd mem., 748 A.2d 407 (Del. 2000); see also Cincinnati SMSA Ltd. P'ship v. Cincinnati Bell Cellular Sys. Co., 708 A.2d 989, 990 (Del. 1998) (stating that "[i]n the narrow context governed by principles of good faith and fair dealing, this Court has recognized the occasional necessity of implying such terms in an agreement . . . [b]ut those cases should be rare and fact-intensive, turning on issues of compelling fairness."). Here, the undisputed evidence demonstrates that BAC provided Emert with ample notice of the express terms of all the stock option awards he received, and it would be inappropriate under Delaware law to require BAC to have provided Emert with any additional notice, notwithstanding Emert's claims that to do so would constitute "best practices" or would mirror practices used by commercial traders of stock options.

The Court has carefully considered all of Emert's additional arguments and finds them meritless. In particular, Emert has not demonstrated that the Employee Retirement Income Security Act of 1974 applies to his option grants or has been violated. The Court similarly finds inapposite Emert's arguments related to the "last clear chance" doctrine and "failure to mitigate damages."

Emert did not attempt to exercise his stock options until months after the expiration date that was clearly set forth in the Award Agreements. Delaware law requires the Court to uphold the express terms of the agreements. Accordingly, the Court concludes that the stock option awards expired prior to any attempt by Emert to exercise his stock options, and BAC is not under any obligation to permit Emert to exercise his options in a manner contrary to the plain language in the agreements.

## CONCLUSION

For the foregoing reasons, BAC's motion for summary judgment is granted. The Court hereby declares that the stock options awarded to Defendant John P. Emert during his employment with Bank of America, N.A., expired ninety days after his voluntary resignation on or about April 15, 2005; any attempt to exercise the stock options thereafter was untimely; and Bank of America Corporation properly terminated Defendant's stock options on or about July 15, 2005. This Memorandum Opinion and Order resolves docket entry no. 14. The Clerk of Court is respectfully requested to enter judgment accordingly and close this case.

SO ORDERED.

Dated: New York, New York
June 28, 2010

LAURA TAYLOR SWAIN
United States District Judge